IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WARREN D. CROZIER, and PAULA M. CROZIER, Parents of Minor Child A.C., | ) ) ) ) | 8:18CV541 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| WESTSIDE COMMUNITY SCHOOL DISTRICT, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs, Warren D. Crozier, and Paula M. Crozier, Parents of Minor Child A.C., filed this pro se case on November 16, 2018, and have been granted leave to proceed in forma pauperis. The matter is now before the court on Plaintiffs' motion for appointment of counsel (Filing 3).

I. BACKGROUND

Plaintiffs' Complaint is nearly identical to a complaint they filed in this court on September 17, 2018, in Case No. 8:18CV438. That case was dismissed without prejudice on October 25, 2018, when the court determined on initial review of the complaint that Plaintiffs lacked standing to bring individual § 1983 claims based solely upon alleged violations of their child's constitutional rights, and that they were not permitted to sue as the child's representatives while proceeding pro se. The court advised Plaintiffs that if they were unable to find an attorney who was willing to take the case on a contingent-fee basis, the action could be re-filed and a request could be made for court-appointed counsel. Plaintiffs were further advised that the court had made no determination regarding the merits of their minor child's claims, and that a re-filed action would not necessarily be permitted to proceed.

## II. SUMMARY OF COMPLAINT

Plaintiffs bring this action on behalf of their minor child ("A.C."), who was enrolled as a student at Westside Middle School in Omaha, Nebraska, during the 2016-2017 school year. Plaintiffs claim Defendants[1] violated their child's First Amendment right to free speech and denied her the equal protection of the laws. Pursuant to 42 U.S.C. § 1983, they seek to recover compensatory and punitive damages, and also request declaratory and injunctive relief.

Plaintiffs claim A.C.'s eighth grade English teacher, Elizabeth Meyers, "violated A.C.'s Constitutional 1st Amendment right to free speech by demanding A.C. stop speaking" during a class discussion (Filing 1, p. 5). Material allegations of fact regarding this claim include:

> 13. On Monday 10/3/16, in 4th period, Meyers presented a video news story on "Athletes kneeling during the National Anthem." Meyers discussed how kneeling was an act of protest in support of the Black Lives Matter Movement, against those in law enforcement. Meyers also stated that white people had said, "They (athletes) should be hanged by the flagpole." Meyers assigned students to watch this video and comment on their views and why or why not athletes were kneeling.
>
> * * *
>
> 15. Upon finishing the video, Meyers called on A.C. to share her ideas. A.C. declined and asked Meyers to call on someone else. Meyers insisted A.C. answer.

---

[1] Defendants include: (1) Westside Community School District; (2) Westside Middle School; (3) Elizabeth Meyers, a teacher at Westside Middle School; (4) Russ Olsen, the school's principal; (5) Enid Schonewise, an assistant superintendent of the school district; and (6) Blane McCann, the school district's superintendent. Meyers is sued in both her individual and official capacities. Olsen, Schonewise, and McCann are sued in their official capacities only.

16. A.C., a 13 year old at the time, formulating ideas and questions, shared that the kneeling was disrespectful to law enforcement and military, and questioned that this violence could have stemmed from music lyrics that said such things as "F-the Police, and the use of the N-word." (as the racial slur, but note that A.C. did NOT use the curse words, but as the 'F-word' and 'N-word' respectively). Meyers demanded where A.C. had gotten this information, and A.C. answered "from the media."

17. A.C. then to explain further, shared an example of her previous school year during 7th grade lunchtime where she overheard two students, one white and one black, where the white student asked why he couldn't say the N-word if the black student could. At this point Meyers interrupted A.C. and demanded A.C. stop speaking. A.C. stated she wasn't finished and needed to explain further, and Meyers forbade A.C. to finish, ....

18. A.C. would have continued her opinion that the use of the N-word should not be said by anyone, but A.C. was not allowed that opportunity....

(Filing 1, pp. 12-13)

Plaintiffs also claim Meyers "purposefully and willfully retaliated against A.C. and further violated A.C.'s Constitutional 1st and 14th amendment rights" on the following day, when "Meyers was fully aware that A.C. was absent from school at home ill" (Filing 1, p. 6). They claim "Meyers took that opportunity to smear and slander A.C.'s excellent reputation and character to the students in every class period," as she "lied to intentionally defame and label A.C. as a 'racist who says the N-word' thus inflicting emotional and physical distress, decimating A.C.'s reputation and placing A.C. in direct harm and danger at school, ..." (Filing 1, p. 6).[2] Material allegations of fact regarding this claim include:

---

[2] Plaintiffs also allege Meyers "made the supposition [*sic*] A.C. was absent that day due to suspension" (Filing 1, p. 17).

> 22. On the morning of Tuesday, 10/4/16, A.C. woke up not feeling well and stayed home from school. The Croziers called the school before classes started and reported A.C.'s absence due to illness and fever.
>
> 23. At 9:56a.m. on Tuesday 10/4/16, Plaintiff Paula Crozier received an upsetting email from Meyers stating that A.C. had to be "cut off" in yesterday's class because the information A.C. shared took a "dicey turn" when A.C. made statements "generalizing blacks." Meyers stated in the email that the Croziers could speak to Meyers about it after school at parent teacher conferences.
>
> \* \* \*
>
> 25. A.C. began receiving texts from students at about noon on Tuesday 10/4/16 with questions about A.C. being suspended for (sic) "What you done" "And I know for a fact what happened in the class", "Your teacher told all the other classes what you said, not what you (sic) anime but what you said" and "I don't think the teacher would lie and tell all the classes something (sic) in true."
>
> 26. With these social media texts and messages coming from angry students, although still sick, A.C. insisted on joining her parents at parent teacher conferences to face Meyers and confront Meyers about what Meyers said to classes that day about A.C. Even walking into the school, A.C. was accosted by students with taunts of "A.C.- we heard what you said". These accusations caused A.C. great fear and emotional distress. On 10/4/16 at approximately 5pm, the Plaintiffs sat down with Meyers to discuss Meyers' actions ....
>
> 27. ... Meyers admitted to not knowing A.C. well enough to make judgments about A.C., but when confronted by Plaintiff who stated, "It is entirely unfair that you label A.C. a racist!" Meyers rolled her eyes and smugly answered, "I do not believe it to be unfair." ...

(Filing 1, pp. 14-15)

Plaintiffs claim Principal Olsen "violated Plaintiff A.C.'s 14th Amendment rights as equal protection under the law by negligence" (Filing 1, p. 6). They allege

Olsen conducted an investigation and, although admitting to Plaintiffs that Meyers' action were "egregious, wrong, and shouldn't have happened," he denied Plaintiffs' "repeated requests of Meyers to apologize to A.C. and to all the students/classes Meyers, taught," and instead "insisted upon speaking directly to a few students A.C. named as friends who now ostracized and harassed A.C. because of Meyers" (Filing 1, p. 6). "Olsen moved A.C. to a different English class upon the insistence of [Plaintiffs]," but Plaintiffs complain that he and Assistant Superintendent Schonewise have not made changes to Meyers' curriculum or taken disciplinary action against her (Filing 1, pp. 7-8). Plaintiffs subsequently removed A.C. from Westside Middle School, and it appears she now attends high school in a different school district (Filing 1, pp. 25-26). Plaintiffs also complain that Superintendent McCann would not communicate with them and that the Westside Community School District did not act on a tort claim they submitted to the board on September 17, 2017 (Filing1, pp. 8-9).

### III. MOTION FOR APPOINTMENT OF COUNSEL

As the court explained in dismissing Plaintiffs' previously filed action, "it is well established that a pro se party may not represent others, even when it is a parent purporting to represent his minor children." *Behrens v. GMAC Mortg., LLC*, No. 8:13-CV-72, 2013 WL 6118415, at *4 (D. Neb. Nov. 21, 2013) (citing cases), *aff'd* 566 F. App'x 546 (8th Cir. 2014). Thus, the present action, which is brought solely on behalf of Plaintiffs' minor child, cannot proceed without an attorney to represent Plaintiffs.[3]

---

[3] Plaintiffs' minor child does not have the legal capacity to bring suit on her own. *See* Fed. R. Civ. P. 17(b)(1) (capacity of an individual to sue is determined by the law of the individual's domicile); *Carlos H. v. Lindsay M.*, 815 N.W.2d 168 (Neb. 2012) (minors are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities); Neb. Rev. Stat. § 25-307 ("[T]he action of an infant shall be commenced, maintained, and prosecuted by his or her guardian or next friend."); *see also* Fed. R. Civ. P. 17(c)(1)(A) (authorizing a general guardian to sue on behalf of a minor).

"Indigent civil litigants do not have a constitutional or statutory right to appointed counsel," *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), but "[t]he court *may request* an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis supplied). However, such appointments are rare. *See Peterson v. Nadler*, 452 F.2d 754, 757 (8th Cir. 1971), *abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa,* 490 U.S. 296 (1989). "In ruling upon a motion for appointment of counsel, the district court may consider the merits of the claim, the plaintiff's efforts to obtain counsel, and the plaintiff's financial ability to retain an attorney." *Hale v. N. Little Rock Hous. Auth.*, 720 F.2d 996, 998 (8th Cir. 1983).

Plaintiffs have demonstrated their lack of financial resources in being permitted to proceed in forma pauperis. Plaintiffs also represent in their pending motion for appointment of counsel that they contacted 8 attorneys prior to filing the previous lawsuit, and that none were willing to take the case on a contingent fee basis. Since the dismissal of that action, Plaintiffs represent they have contacted 27 additional attorneys in private practice, Nebraska Legal Aid, and Creighton University's legal clinic, but have not been able to find anyone to represent them. The court accepts the truthfulness of these representations, and does not question that Plaintiffs have made a diligent effort to retain counsel. After carefully reviewing the detailed allegations of Plaintiffs' Complaint, however, the court concludes that the constitutional claims asserted are not sufficiently meritorious to warrant the appointment of counsel.[4]

> There is no right to counsel in civil cases. Even where, as here, "'without appointment of counsel, the case will not go forward at all,' appointment of counsel is not required 'when it is clear no substantial claim might be brought on behalf of such a party.'" [*A.M. ex rel J.M. v. NYC Dept. of Educ.*, 840 F.Supp.2d 660, 675 (E.D.N.Y. 2012)] (quoting [*Wenger v. Canastota Central Sch. Dist.*, 146 F.3d 123, 125 (2d Cir.

---

[4] Indeed, the court is not surprised that Plaintiffs have been unable to retain counsel on a contingent fee basis, even though their minor child allegedly has suffered extreme emotional distress, anxiety, and depression, and even though attorney's fees are recoverable by a plaintiff in a successful § 1983 action. *See* 42 U.S.C. § 1988(b).

1998), *overruled on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007)], and citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir.1989) ("[E]specially a threshold showing of some likelihood of merit, should be borne in mind by trial and appellate courts in deciding whether to appoint counsel."); *Schoon v. Berlin*, No. 07 CIV. 2900 JGK, 2011 WL 1085274, at *2 (S.D.N.Y. Mar. 23, 2011) (denying appointment of counsel and dismissing all claims brought on behalf of child without prejudice where the complaint had "provide[d] insufficient indicia that the claims [we]re likely to be meritorious"); *Mills v. Fischer*, No. 09-CV-0966A, 2010 WL 364457, at *2 (W.D.N.Y. Feb. 1, 2010) (Telesca, D.J.) (denying appointment of counsel for pro se minor in Section 1983 suit where the claims raised in the complaint were "not likely to be of substance")).

> In determining whether appointment of counsel is necessary in a pro se case brought by a party who is unable to represent himself because he is a minor or is otherwise incompetent, the Court must consider whether, without appointment of counsel, the case will go forward at all. Such a party will have no means of asserting his rights other than through counsel. If the infant or incompetent party is unable to retain private counsel and is also eligible for poor person status, the Court must determine whether appointment of counsel would be in order. Of course, this does not mean that appointment of counsel is required when it is clear that no substantial claim might be brought on behalf of such a party. Because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause,' *Cooper*, 877 F.2d at 172, appointment should only be made where the allegations raise a claim which is likely to be of substance.

*Stevens v. Ashley Mgmt. LLC*, No. 15-CV-462S, 2016 WL 632005, at *2-3 (W.D.N.Y. Feb. 17, 2016) (denying appointment of counsel and dismissing without prejudice claims brought on behalf of plaintiff's minor children for alleged ADA and FHA violations); *see also Moses v. Gardner*, No. 14-02706-SHL-DKV, 2016 WL 11249025, at *17 (W.D. Tenn. Oct. 11, 2016) (denying motion for appointment of counsel where plaintiff's chances of success on claim brought on behalf her minor child were "very slim"), *report and recommendation adopted*, No. 14-CV-2706-SHL-

DKV, 2017 WL 1364977 (W.D. Tenn. Apr. 12, 2017), *aff'd*, No. 17-5497, 2017 WL 9251805 (6th Cir. Nov. 9, 2017); *Inkel v. Connecticut*, No. 3:14-CV-01303 MPS, 2015 WL 4067038, at *5-6 (D. Conn. July 2, 2015) (declining to appoint counsel where claims brought on behalf of plaintiff's minor children were not "likely to be of substance"); *Booker v. Sullivan*, No. CA 8:11-1131-HMH-JDA, 2011 WL 3704199, at *3 (D.S.C. Aug. 23, 2011) (plaintiff suing on behalf of his minor child failed to show exceptional circumstances or a colorable claim for relief to justify appointment of counsel); *Terry v. Inocencio*, No. 3:11-CV-0660-K BK, 2011 WL 4527377, at *2 (N.D. Tex. Sept. 6, 2011) (denying appointment of counsel where claims alleged on behalf of plaintiff's minor child lacked an arguable basis in law), *report and recommendation adopted*, No. 3:11-CV-00660-K, 2011 WL 4485819 (N.D. Tex. Sept. 27, 2011).

In the present case, Plaintiffs are unlikely to prevail on their claims that a middle school teacher violated their child's constitutional rights by silencing her during a classroom discussion and then retaliating against her for what she said.

> "Although students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,' *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Constitution does not compel 'teachers, parents, and elected school officials to surrender control of the American public school system to public school students.' *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) (quoting *Tinker*, 393 U.S. at 526, 89 S.Ct. 733 (Black, J., dissenting)). The constitutional rights of public school students 'are not automatically coextensive with the rights of adults in other settings,' *Fraser*, 478 U.S. at 682, 106 S.Ct. 3159, and a school need not tolerate speech that is inconsistent with its pedagogical mission, even though the government could not suppress that speech outside of the schoolhouse. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (citing *Fraser*, 478 U.S. at 685, 106 S.Ct. 3159); *Poling v. Murphy*, 872 F.2d 757, 762 (6th Cir. 1989) ('Limitations on speech that would be unconstitutional outside the schoolhouse are not necessarily unconstitutional within it.'). Therefore, courts must analyze

First Amendment violations alleged by students 'in light of the special characteristics of the school environment.' *Hazelwood*, 484 U.S. at 266, 108 S.Ct. 562 (quoting *Tinker*, 393 U.S. at 506, 89 S.Ct. 733)." *Henerey ex rel. Henerey v. City of St. Charles, School Dist.*, 200 F.3d 1128, 1131–32 (8th Cir. 1999).

"Purely individual speech by students constituting 'personal expression that happens to occur on the school premises' is subject to a high degree of First Amendment protection." *Id.* at 1132.... "However, school officials may restrict even individual student expression that 'materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school,' or that 'would substantially interfere with the work of the school or impinge upon the rights of other students.' *Tinker*, 393 U.S. at 509, 89 S.Ct. 733 (citations and internal quotation marks omitted)." *Id.* at 1132.[5]

"When the expressive conduct at issue occurs in the context of a school-sponsored activity that is not also a public forum, the authority of schools to exercise control over the content of speech is at its greatest. *See, e.g. Hazelwood*, 484 U.S. at 276, 108 S.Ct. 562 (school may censor official student newspaper); *Fraser*, 478 U.S. at 678, 106 S.Ct. 3159 (school may ban sexually suggestive language in speech before high school assembly); *Lacks v. Ferguson Reorganized Sch. Dist. R*-2, 147 F.3d 718, 724 (8th Cir.1998) (school may ban profanity in creative writing class), *cert. denied*, 526 U.S. 1012, 119 S.Ct. 1158, 143 L.Ed.2d 223 (1999); *Poling*, 872 F.2d at 764 (school may ban insulting references in student council election speech). In the absence of a public forum, school officials may limit a student's speech in a school-sponsored activity if the limitation is 'reasonably related to legitimate pedagogical concerns.' *Hazelwood*, 484 U.S. at 273, 108 S.Ct. 562." *Id*....

---

[5] "Under *Tinker*, 'conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is ... not immunized by the constitutional guarantee of freedom of speech.'" *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776-77 (8th Cir. 2012) (quoting *Tinker*, 393 U.S. at 513).

> "The nature of the forum affects the degree of protection the First Amendment affords to expressive activity, even within the public school setting. *See, e.g., Hazelwood*, 484 U.S. at 267, 108 S.Ct. 562 (conducting forum analysis as first step in addressing student speech claim); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ('The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.'); *Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1540 (7th Cir.1996) (prior restraint of student speech not unconstitutional in nonpublic forum)." *Id.*

*Anderson v. Milbank Sch. Dist. 25-4*, 197 F.R.D. 682, 686-87 (D.S.D. 2000) (granting summary judgment in favor of school district on claim that disciplining of student for uttering profanity in principal's office was unconstitutional).

> "[E]ducators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." [*Hazelwood*, 484 U.S.] at 273, 108 S.Ct. 562. We permit "greater control over" school-sponsored speech "to assure that participants learn whatever lessons the activity is designed to teach." *Id.* at 271, 108 S.Ct. 562. Educators may also limit speech that is "ungrammatical, poorly written, inadequately researched, biased or prejudiced, vulgar or profane, or unsuitable for immature audiences." *Id.* It is only when the decision to limit school-sponsored speech "has no valid educational purpose that the First Amendment is so directly and sharply implicated as to require judicial intervention to protect students' constitutional rights." *Id.* at 273, 108 S.Ct. 562 (quotation, citation, and alteration omitted).

*Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 982 (10th Cir. 2017).

> "[T]he question of whether speech is constitutionally protected [has been equated] with the question of whether a school official restricted that speech based on legitimate pedagogical concerns." *Id.* at 983 (citing *Vanderhurst v. Colo. Mountain*

*Coll. Dist.*, 208 F.3d 908, 914 (10th Cir. 2000)). "That is, whether an action restricting a plaintiff's school-sponsored speech is "reasonably related to the [school's] legitimate pedagogical interests is the test for determining whether his speech fell within the ambit of First Amendment protection." *Id.* (quoting *Vanderhurst*, 208 F.3d at 914).

"Few activities bear a school's 'imprimatur' and 'involve pedagogical interests' more significantly than speech that occurs within a classroom setting as part of a school's curriculum." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1289 (10th Cir. 2004) (quoting *Fleming v. Jefferson County Sch. Dist. R*-1, 298 F.3d 918, 924 (10th Cir. 2002)). "So long as the teacher limits speech or grades speech in the classroom in the name of learning and not as a pretext for punishing the student for her race, gender, economic class, religion or political persuasion, the federal courts should not interfere." *Id.* at 1293 (10th Cir. 2004) (quoting *Settle v. Dickson Cty. Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. 1995)). "[U]ltimate authority to determine what manner of speech in the classroom ... is inappropriate properly rests with the school board, rather than with the federal courts." *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 722 (2d Cir. 1994) (internal quotations and citations omitted). "Whether a school invites or solicits speech from students helps determine whether student speech is consistent with the school's pedagogical goals. But the fact the speech was invited during a curricular activity does not necessarily prevent the school from limiting the student's response. The school may properly require that the solicited speech respond to the subject matter at hand." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 96-97 (3d Cir. 2009) (citations omitted).

To prevail on a Section 1983 action, a plaintiff must prove two elements: (1) the action complained of was committed by a person acting under color of state law, and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Dubose v. Kelly*, 187 F.3d 999, 1002 (8th Cir.1999). Here, Plaintiffs claim a public school teacher deprived A.C. of her First Amendment rights by restraining her speech during a classroom discussion.

Specifically, Plaintiffs allege that A.C. was not permitted to express her opinion that the "N-word" should not be said by anyone. Plaintiffs also claim A.C. was retaliated against for statements she made prior to being "cut off" by the teacher. That is, they allege that Meyers intentionally defamed A.C. by telling her students that A.C. is "a racist who says the N-word" and implying that A.C. had been suspended. To prevail on either of these § 1983 claims,[6] Plaintiffs must establish that A.C. was engaged in constitutionally protected activity while she was speaking in class.[7] As the foregoing authorities make clear, the First Amendment affords little protection to student speech during class time, and Meyers most likely would be entitled to qualified immunity.[8]

---

[6] Plaintiffs also assert an equal protection claim, but there are no allegations of fact in the Complaint to support such a claim. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). *See Stamm v. Cty. of Cheyenne*, 326 F. Supp. 3d 832, 859 (D. Neb. 2018) (quoting *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990)). Nor have Plaintiffs alleged a plausible due process claim. *See Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003) ("[M]ere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest.").

[7] To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) she engaged in protected activity; (2) the government official took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right. *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

[8] "A government official is entitled to qualified immunity unless (1) the official violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation." *Wallace v. City of Alexander*, 843 F.3d 763, 768 (8th Cir.

*See, e.g., Pompeo*, 852 F.3d at 989 (affirming summary judgment granted in favor of college professor and department chair because clearly established law did not prohibit school official from restricting statements that educator found inflammatory and divisive in school-sponsored speech).

Qualified immunity does not apply to official-capacity claims or to claims brought directly against governmental entities. *See Brandon v. Holt*, 469 U.S. 464, 472-73 (1985). However, there can be no liability unless a "policy" or "custom" caused the alleged violation of constitutional rights. *See Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Here, Plaintiffs' do not allege that A.C.'s constitutional rights were violated because of any policy of Westside Community School District.

To establish the existence of a governmental custom of failing to receive, investigate and act upon complaints of violations of constitutional rights, a plaintiff must prove (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees, (2) deliberate

---

2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal quotation marks and citations omitted).

indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct, and (3) that the plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991) (holding that school board was not liable to elementary school students sexually abused by teacher because five complaints of sexual abuse lodged against teacher over 16-year period did not comprise persistent and widespread pattern of unconstitutional misconduct, and because there was no showing that board had knowledge of those complaints). In the present case, Plaintiffs merely complain that the school district and its administrators failed to take after-the-fact corrective action.

With respect to Plaintiffs' request for declaratory and injunctive relief,[9] the Complaint indicates that A.C. is no longer a student at Westside Middle School. She therefore lacks standing to request any relief other than damages. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012) (citation omitted) (quoting U.S. Const. art. III, § 2, cl. 1.). The doctrine of standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks, emphasis, and citation omitted). The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Id.* (citing *Los*

---

[9] Plaintiffs request the court to "enter a declaratory judgment stating that Defendants have violated the First Amendment to the United States Constitution" and to "enter a preliminary and permanent injunction enjoining Defendants from enforcing the Westside Community School District guidelines in teaching in classrooms, and enforcing teacher discipline in teacher bullying and defamation in a manner inconsistent with the First Amendment to the United States Constitution, including an order providing that Plaintiff A.C., Minor Plaintiff, and all other students are allowed to present her views and formulate opinions in a truly 'safe space' of educational discovery" (Filing 1, p. 27).

*Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "The case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). "The controversy must be live throughout the course of the litigation and must exist at the time of the district court's hearing of the matter and not simply when the case is filed." *Id.*

Even if the allegations of Plaintiffs' Complaint might be construed to support one or more causes of action under state law, it is unlikely this court would exercise supplemental jurisdiction over those claims. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. *See Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014). This determination is a matter of discretion for the court, but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [or supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Finally, it has not been shown that A.C. will be prejudiced if this action is dismissed for lack of counsel. Under Nebraska law, if a person who is entitled to bring a tort action is a minor at the time the cause of action accrues, the statute of limitations is tolled until he or she reaches the age of 21.[10] *See* Neb. Rev. Stat. § 25-213; *Doe v.*

---

[10] However, the age of majority is 19. *See* Neb. Rev. Stat. § 43-2101.

*McCoy*, 899 N.W.2d 899, 901 (Neb. 2017); *Brown v. Kindred*, 608 N.W.2d 577, 580 (Neb. 2000).

## IV. CONCLUSION

The court finds that the constitutional claims asserted by Plaintiffs on behalf of their minor child are not likely to be of substance, and, consequently, that providing Plaintiffs with court-appointed counsel is not indicated. Because Plaintiffs are not permitted to sue as the child's representatives while proceeding pro se, their Complaint must be dismissed without prejudice.

IT IS THEREFORE ORDERED:

1. Plaintiffs' motion for appointment of counsel (Filing 3) is denied.

2. Plaintiffs' Complaint is dismissed without prejudice.

3. Judgment will be entered by separate document.

DATED this 17th day of January, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge